Thank you very much. Thank you. Could you call the next case, please? In re Garcia. Miles L prints appearing for appellant and Andrew by some appearing for. All right, counsel, would you like to reserve any time for reply? Yes, your honor will reserve 8 minutes for a response. Thank you. All right, you may proceed. Thank you. May it please the court. You know, I, I think this panel's decision is actually quite important on a very practical level for the day to day administration of judicial for non non judicial foreclosures in California. We are dealing with a civil code section that has not really reached this panel in a meaningful way. It's a fairly novel statute. And as such, I think it's important for this panel to. Really recall and focus on its purpose. And it was, as we present in our briefing, a part of a bundle of bills in the California legislature that was. Very specifically aimed at housing relief and housing reform, and with the very specific stated goal of getting owner own Californians into homes quickly, efficiently and without much legal process and. 1 goal, 1 element of those bundles of bills was was this civil code section 2924 M, which elevates intended. Owner occupants above really almost everyone else in a non judicial foreclosure. To provide finality and to provide title immediately and the few bankruptcy courts that have grappled with the statute have really underscored that purpose. That title vests immediately to the intended owner occupant as soon as that sale becomes final. And I think what we have here. Isn't that counsel? Isn't that only if you call if the winning bid is from a prospective owner occupant? Yes, and I think, though, that the question this panel has now directly on that point is who gets to make that decision? Who gets to reviewable. And exactly is it reviewable and Mr. Prince. Didn't quality have some discretion. I think quality did, and the evidence shows that quality in fact, decided that this did qualify when we look at the record. The only reason my client doesn't hold title to this property today is that. Far, far later in the process, for whatever reason, that's still to this day. I cannot understand quality loans. Freaked out over the annulment order. It had nothing to do with the fact that whether or not my client was a qualified bidder or was a qualified owner occupant quality loan. Just panicked that they weren't specifically mentioned in the annulment order, and the bankruptcy court is on the record at multiple hearings, saying the bankruptcy court itself doesn't understand that the bankruptcy court crafted its annulment order specifically. To annul the actions of quality in that foreclosure sale. But for whatever reason, that wasn't enough for quality. Does quality have discretion to review the affidavit? The civil code itself says that the foreclosure and trustee can rely on the affidavit and the declaration. And I think the evidence. I can't. Can't is a different word than shall. Excuse me. I'm sorry. You broke up your hand. But Judge Corbett is saying, is asking whether there's discretion and you're citing a statute that says the trustee can rely on the affidavit. Doesn't that imply that it doesn't have to? Possibly, but in the situation like here where they do, I think the sale becomes final. Because even if later, it's determined that the bidder was not a prospective owner occupant. Final means final. I don't think you say they did accept it. Well, they did receive it. But if you could go a little more detail is why you think that they finally accepted it because they asked a lot of questions about it. And finally, I am having a hard time seeing that they actually accepted it. I would point to 217 and 219 in the. I want to know the facts here. What are the facts here? What did they do? Other than, you know. No question that they received it. Did they accept slash approve it? They did because after they received it as demonstrated in 217, 219 in the excerpts of record, they emailed our office and said, hey, by the way, we're preparing title. But the title is going to go to your client in an individual capacity, not in his trust. And I think that that is demonstrative evidence that they not only received that affidavit, but they accepted it. And they began working on a title to vest in my client's own personal name, which would qualify under the statute so that they began working on it. They said they're preparing it. They didn't say that they've prepared it. I mean, why couldn't they change their mind and tell they've actually prepared it and delivered it? You know, they were still reviewing it while they were preparing it, right? It's not prepared in past tense. It's preparing. I think because as one of the few other bankruptcy courts that have grappled with this novel statute say, and that was the in race spikes. I believe is that it becomes it's immediate. It's like a guillotine that when that happens, the sale becomes final and title vests immediately. Whether or not the foreclosure and trustee has sort of dotted the I's and crossed the T's, the sale is final and title has already vested. Well, I mean, you're saying I'm sorry. Go ahead, Judge Brekker. Well, I think it gets back to what Judge Brekker was saying. It's that they can. And so somewhere in the process, they could decide that they will cannot. I mean, and we have preparing and all this, but I don't see any place that they actually did it. If it was clearly an affidavit that didn't meet the statutory requirements and they said we're reviewing it. Or that we're thinking about preparing stuff. That's not enough until they actually accept it. I think that maybe. More illustrative is that even after all that process, and this is maybe something that should have been underscored with it was before the before the bankruptcy court, and it's before this court, but maybe something that should have been highlighted is that even after all of this happened, Quality refunded the funds to my client personal. The check for the refund is made out to Steven Edward. It's not made out to CIC. It's not made out to the trust. It was the annulment for which Quality decided it could not deliver the deed. It had nothing to do with my client's status as an intended owner-occupant. That had already been determined. The bankruptcy court then comes in and says, no, no, the annulment issue is not an obstacle for Mr. Edward. It's the fact that in the bankruptcy court's view, he was never an intended owner-occupant. That wasn't the issue for the foreclosure trustee. That was buttoned down for the foreclosure trustee, and it remained buttoned down until the fact that they refunded the funds to him personally. And I've already gone past the time I reserved. Let me, okay, he accepted the funds though, right? Did he cash it? I mean, he could have said, I'm not going to take the funds back because I own the property. Did he do that? There were months of a tennis match of volleying those funds back and forth, and I believe they're still in our trust account. Let's go ahead and let you reserve as much time as we have left. We'll hear from Mr. Bison. Good morning, and may it please the court. I believe the appellate kind of misstates the court's ruling on this matter. As it frames the argument, it states that the court held that Edward cannot qualify as prospective owner-occupant merely because he used his trust or used the trust as a vehicle, but that's not what the court ruled. The court didn't state that you cannot use a trust and still qualify as an owner-occupant. What it said is that this trust did not qualify as an owner-occupant, and what it focused on was the fact that Edward was not the trustee. The trustee was some entity called CIC. CIC does not appear to be a natural person. A trust can be a vehicle. A person can use a trust as a vehicle and still qualify as an owner-occupant. An ordinary express trust is not an entity that's separate from its trustees, and a natural person who is both the trustee, the settler, and the beneficiary may qualify as a natural person for purposes of Section 2924M, but that's not what happened here. What we have here is Edward is not the trustee, and as a result, this trust cannot qualify to be a prospective owner-occupant. Not only did the court make that determination, but so did Quality Loan. Quality Loan made the same determination, and as a result, it returned—it rescinded the sale and returned all of the funds to CIC. I understand Mr. Prince says that the check was made out to Edward personally, but in all of the emails and all of the evidence, it shows that the check was to be made out to CIC, and I've never seen any evidence, and it was never argued in the bankruptcy court that the check was actually made out to Mr. Edward personally. And the reason for that was that CIC was—that's who made out the check. The check was made from CIC, and the check was returned to CIC. It may have gone through the Prince Law Firm, but it was made out to CIC, and it's never been argued as to anything else until today. I think I heard Mr. Prince say in his rebuttal—he can clarify me if I've got it wrong—is that Quality did make the decision that the purchaser did qualify under the statute, and I hear you say that Quality never made that decision, that they were reviewing it, that they were exercising their discretion. Could you please comment on that? Yes. It's clear from the email exchange that Quality accepted the affidavit as being timely, even though there was some dispute as to whether it was submitted timely, but Quality did accept it based upon Mr. Prince's representation that it was timely submitted. But it never said that, yes, we've reviewed the affidavit, and we have made the determination that the trust is a prospective owner-occupant. On the contrary, after back and forth, they requested a copy of the trust to confirm that this was a testamentary trust, and after not receiving a copy, they then decided that, no, we cannot make a determination that the trust qualifies to be a natural person, and therefore we are rescinding the sale. That's clear in the email exchange, and that's when they rescinded the sale and refunded the funds to, in a check made out to CIC. But, yeah, so, and if the trust did not qualify to be a natural person, then the sale could not have been completed, because if the determination was made that the trust was not a natural person, then it could not qualify to be a prospective owner-occupant, and then Quality would have had to take steps to comply with Section 2924, which it did not do. The Quality would have been required to post on its website and provide certain information as to the general public as to the amount of the highest bid, and this was never done, and it never submitted, provided a trust deed. I mean, everything just kind of stopped, and to this day, well, the trustee, the mortgage owner is continuing to receive mortgage payments and is accepting those mortgage payments through the plan. So even if, as long as the court finds, you know, as Judge Hull found that the trust did not qualify as an owner-occupant, then Quality alone never went forward and did what it was required to do under 2924M in order to complete the sale. So that's where we're at with that. And then while Mr. Princeton raised these issues in his oral arguments, he did raise certain other issues in the brief pertaining to whether, no, whether, as to whether the court correctly made, ruled on a cross-complaint that Edward did not have any interest right or title to the property and said that it never had an opportunity to address that. But on the contrary, the complaint filed by Mr. Garcia, that's on the very first claim for relief. Mr. Garcia asked for judgment that he is the owner of record of the Coolidge Avenue property and that Edward's trust has no right, title, or interest in or to the property. The trust's own cross-complaint asked for quiet title and asked for the same relief, that the trust is the rightful owner of the property. So to state that it did not have an opportunity to argue that at the trial court, an emotional summary judgment, is just not correct. It also makes an argument on regarding prior restraint. However, again, it never raised that issue on the motion for summary judgment. It was never addressed in its pleadings, either in its opposition to the motion for summary judgment, and never argued at hearing. So those arguments cannot be brought up on appeal for the first time. And it waves the argument that the court's ruling is an exercise of prior restraint. But I think I've covered everything I have to say on the subject. I know the panel has reviewed all of the pleadings and all of the evidence, and I will rest. Any other questions? Mr. Corbett? No? Thank you. All right. Mr. Prince, you have about six and a half minutes left. I'll reply. Thank you. I want to address this issue that the trust is not, this trust is not an owner-occupant because the trustee was purportedly to be this entity CIC. The only evidence of that is the receipt of funds issued at the actual auction. And I think it's important to remember that those receipts issued at auctions are not legal instruments. They're not required under their law. They're not even really contemplated under California's foreclosure statutory scheme. Those are really just creatures of practice because of the reality that oftentimes people show up with, you know, a certain amount of cashier's checks and you need to refund it, and the trustee wants to document that the difference between the bid and the cashier's checks accepted was issued. But Mr. Prince, didn't the affidavit actually seek to have title vested in the Stephen Edward Trust as CIC, as trustee? I mean, it's not just the receipt of funds. Mr. Edward, in the affidavit, requests that title be vested in the trust with CIC as trustee. Yes, and I think that's simply because that's how Mr. Edward was told his trust was set up. But the important point there, and I think it's important that you raise that, Your Honor, is that in response, that's when Quality said, okay, but we have to do it in your name personally. And I think that when Mr. Bissum raises the fact that there was then no overbid procedure, that's in fact further evidence that Quality Loan accepted that this was a qualified owner-occupant because had they not, they would have proceeded with the overbid procedure because the whole point of this Code Section 2924M is that you don't need to do the overbid when you have a qualified intended owner-occupant. And the fact that Quality Loan did not proceed to overbid shows that they stopped the process there. Had they determined this is not a qualified owner-occupant, it would have been still a valid foreclosure. They would have just continued through the normal process and taken it to overbid. The fact that they stopped and they didn't do the overbid procedure means that when they got that declaration, they said, okay, we have a qualified owner-occupant. They're wrong that our owner-occupant is wrong. We can't give him title as CIC with trustees. So that's why they sent that email and said, by the way, the deed you're going to be getting names you as the trustee or names you as the nominal title holder. And I just always, in this case, come back to that. The law can't be so easily defeated because for everything that stands true, the next day after my client got that title, he could have transferred Quick Claim Deed It to CIC as trustee. I mean, it's so silly to suggest that who is holding title as trustee of this trust is so central that the quality loan that it invalidates the entire thing. Mr. Prince, though, aren't you ignoring history of the deed of trust law in California and in the other states in the West? Deed of trust law was created to provide a simplified method of foreclosure to reduce costs for everyone. But it wasn't designed to take away all the fairness or protection of equities and properties. And here, California legislature has provided a situation to sort of help homeowners and people that would occupy the property. I mean, there wasn't, the statute wasn't designed just to protect the people buying at the foreclosure sale that are doing it for investment purposes. It created some protections to look at these things and it looks like it gave quality some discretion to make these decisions. I don't think, we don't necessarily take a position to what degree quality had discretion, but I think it's very clear in this particular case to what degree they chose to exercise that discretion. And I think it's very clear they exercised that discretion, determined that my client qualified so long as they issued title to him personally, and then they just got spooked with the annulment order. And so I don't think it's fair to my client that the bankruptcy court rewrites history itself and says, no, the real problem was with the identity of the purchaser. The annulment issue, which prevented my client from actually receiving title was fine, but actually quality should have never proceeded past the identity of the owner. And that's the real issue. I do want to, with the remaining 90 seconds, address these final two points in the appeal. The prior restraint issue, I mean, it's quite shocking. And the reason it was never addressed was because it totally blindsided us and it was not an issue on the summary judgment. I mean, to say that my client can't speak to any of the tenants of this building, what if he canvases for a political campaign and knocks on their door? What if he sparks, one of them ends up being his coworker? I mean, there are reasons why prior restraints are so constitutionally impermissible subject really extraordinary circumstances. And the fact that it was unaddressed as Mr. Bissum notes, is that clearly those standards were not meant, were not met here. They weren't even addressed. So I certainly do not think that the bankruptcy court can restrain my client from even speaking to an occupant of the building. That is quite a quite a drastic order. And finally, whether or not the relief sought by way of the cross complaint mirrors the relief sought of the complaint, it is undisputed. There was no motion for summary judgment on our cross complaint other than our own. Our motion was denied, their motion was granted, but their motion only sought judgment under the complaint. There was no motion for summary judgment in favor of the debtor on our cross complaint. And I think under Ninth Circuit authority that very clearly constitutes a sua sponte summary judgment that can't stand. And maybe the issues are resolved by some form of estoppel or issue preclusion. I don't know, but I think that that is at least a day in court that my client is still entitled. Thank you very much. Any other questions for counsel? Thank you. Then that'll conclude our argument. We'll take the matter under submission, try to get out a decision as soon as possible. That'll conclude the case. Madam Clerk, I believe that concludes all matters for argument this morning. Yes, this session is in recess. Thank you. Thank you.
judges: Spraker, Corbit, and Niemann